IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION
No. 5:07-CR-255-D
No. 5:11-CV-181-D

| | | |
|---|---|---|
| GREGORY THOMAS MYERS, | ) | |
| | ) | |
| Petitioner, | ) | |
| | ) | |
| v. | ) | **ORDER** |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Respondent. | ) | |
| | ) | |

On April 14, 2011, Gregory Thomas Myers ("petitioner" or "Myers"), a federal inmate proceeding pro se, filed a motion to vacate, set aside, or correct his sentence pursuant to 28 U.S.C. § 2255 [D.E. 146]. On June 20, 2011, the United States ("respondent" or "government") moved to dismiss Myers's motion [D.E. 151]. Pursuant to Roseboro v. Garrison, 528 F.2d 309, 310 (4th Cir. 1975) (per curiam), the court notified Myers of the motion to dismiss, the consequences of failing to respond, and the response deadline [D.E. 153]. On August 8, 2011, Myers responded in opposition to the government's motion [D.E. 156]. On January 19, 2012, Myers filed a "motion to compel an answer, for issuance of improper subpeona [sic]" [D.E. 157]. As explained below, the court grants the government's motion to dismiss and denies Myers's motion to compel.

I.

On June 4, 2007, the United States Attorney issued a target letter to Myers. On June 4, 2007, the court appointed the Federal Public Defender's Office to represent Myers [D.E. 2]. On September 5, 2007, a federal grand jury in the Eastern District of North Carolina indicted Myers for one count of mail fraud, in violation of 18 U.S.C. § 1341 [D.E. 4]. On January 14, 2008, the court allowed the

Federal Public Defender's Office to withdraw from representing Myers [D.E. 17], and, on January 23, 2008, James B. Craven III ("Craven") filed a notice of appearance on behalf of Myers [D.E. 18].

On February 6, 2008, the court ordered Myers to undergo a psychiatric examination [D.E. 21]. On June 10, 2008, the court entered a second order for Myers to undergo a psychiatric examination [D.E. 27]. On August 20, 2008, Craven filed a motion to withdraw as Myers's counsel [D.E. 32]. On September 3, 2008, the court entered a third order for Myers to undergo a psychiatric examination [D.E. 36]. On February 13, 2009, Myers filed a motion for leave to proceed pro se, with Craven serving as standby counsel [D.E. 44]. Myers then filed several pro se motions [D.E. 45–46, 50–51, 53]. On April 2, 2009, the court denied Craven's motion to withdraw, Myers's motion for leave to proceed pro se, and each of Myers's pro se motions [D.E. 60]. That day, Myers filed a motion for a restraining order against Craven [D.E. 70].

On April 16, 2009, a federal grand jury in the Eastern District of North Carolina issued a superseding indictment, charging Myers with two counts of mail fraud, in violation of 18 U.S.C. § 1341, and one count of mail fraud and aiding and abetting, in violation of 18 U.S.C. §§ 1341 and 2 [D.E. 76]. On April 20, 2009, the court denied Myers's motion for a restraining order [D.E. 73], and the court issued its fourth order for Myers to undergo a psychiatric examination [D.E. 75]. On May 18, 2009, the court conducted a competency hearing and found that Myers was competent to stand trial [D.E. 82]. Myers then pleaded not guilty to each of the three counts alleged in the superseding indictment [D.E. 83].

On July 27, 2009, the court held another hearing during which Myers pleaded guilty to each of the three counts alleged in the superseding indictment [D.E. 110]. Thereafter, Craven filed three sentencing memoranda on behalf of Myers [D.E. 117, 119, 120].

On November 19, 2009, the court sentenced Myers [D.E. 127, 130]. At the outset of the

sentencing hearing, the court—after hearing from Myers, Craven, and the government, and considering the entire record of the case—found Myers to be competent to proceed. See Sent'g Tr. [D.E. 141] 3–4. Next, the court listened to and considered Craven's argument that the probation officer, in the presentence report ("PSR"), incorrectly calculated loss. See id. 8–12. However, while Craven argued, Myers suddenly shouted expletives, stood up, and repeatedly struck the counsel table's glass surface with a microphone. Id. 12–13; see also [D.E. 121] (photographs of the shattered glass surface). A Deputy United States Marshal wrestled Myers to the ground as another deputy marshal, as a precaution, drew her taser gun. Sent'g Tr. 12–13. The deputy marshals shackled Myers and removed him from the courtroom. Id. The court then stood in recess while the shattered glass was removed. Id. 13.

When the court reconvened to resume Myers's sentencing hearing, the court informed Craven and the government that, according to the deputy marshals, Myers had attempted to mutilate himself and was being transported to Federal Correctional Institution-Butner ("FCI-Butner") in full restraints. Id. 14. The court determined that it was not safe for Myers to return to the courtroom. See id. The court then heard from Craven and the government regarding whether the court, pursuant to Federal Rule of Criminal Procedure 43, could sentence Myers in his absence. Id. 14–22. Craven noted that, although Myers was legally competent, he was "simply becoming increasingly uncomfortable at the thought of [Myers] being sentenced without the [c]ourt and all concerned knowing more about his current state of health[—]physical, mental, and emotional." Id. 19. The government argued that Myers was "intent on disrupting the proceedings" and that the court should continue without him. See id. 21–22. The court noted that it had adequately warned Myers in previous appearances that he could be removed if he disrupted proceedings, and that nevertheless Myers "engage[d] in egregiously disruptive behavior this morning; [and] that the disruptive behavior . . . would continue

3

if he were brought back here, whether it was today . . . or even six months from now." Id. 23–26. The court concluded that, pursuant to Rule 43(c)(1)(C), Myers had waived his right to be present for the remainder of his sentencing hearing. Id. 25–26. Neither party objected. Id. 26.

Craven then continued to argue his objection to the loss calculation, after which the government responded. See id. 26–31. After considering the arguments and Fourth Circuit precedent, the court overruled the objection. See id. 31–33. Craven next objected to an obstruction of justice enhancement, which the court overruled in light of Myers's conduct earlier that day. See id. 33–34. Craven then argued in support of Myers's being credited for accepting responsibility, which the court denied. See id. 34–36. Next, the court overruled objections that Myers had made pro se, including his objection to the court's being able to, at sentencing, make factual findings based on a preponderance of the evidence. See id. 40. Finally, Craven argued that Myers should not receive an enhancement for use of sophisticated means, but the court concluded that the enhancement was warranted. See id. 40–45.

After addressing the objections, the court considered and rejected Craven's argument for a downward departure, and then heard from Craven about the 18 U.S.C. § 3553(a) sentencing factors. See id. 45–52. Next, the government called Kelly Dorisio ("Dorisio"), Myers's former wife, to allocute. Id. 53. Craven objected that Dorisio was not a victim of Myers's offenses. See id. The government responded that Myers's offenses adversely affected Dorisio, and, in the alternative, that the court could consider her statements pursuant to 18 U.S.C. § 3661. Id. 53–54. The court permitted Dorisio to speak. Id. 54. The court also heard from a representative of United States Automobile Association, a victim of Myers's offenses. See id. 59–62. The court then sentenced Myers to 71 months' imprisonment. Id. 66.

Myers appealed his sentence, arguing that the court erred when it allowed Dorisio to make

4

an unsworn statement during the sentencing hearing. See United States v. Myers, 402 F. App'x 844, 845 (4th Cir. 2010) (per curiam) (unpublished). The Fourth Circuit rejected the argument and affirmed Myers's sentence. Id.

Myers makes two arguments in support of his motion to vacate. First, he contends that Craven provided him ineffective assistance before and during Myers's sentencing hearing and on appeal. See Mot. Vacate [D.E. 146] 4–7. Regarding his sentencing, Myers alleges that Craven failed to (1) object to the inclusion of certain relevant conduct in the PSR, (2) object to the loss calculation in the PSR and contest the loss calculation at the hearing, (3) cross-examine Dorisio at the hearing, (4) argue that the cessation of Myers's medication "could affect his ability to obtain a fair hearing," and (5) protect Myers's rights after he was removed from the courtroom. See id. 4–5. Regarding his appeal, Myers alleges that Craven failed to argue on appeal that (1) the burden of proof improperly required Myers to disprove losses and (2) Myers's removal from the courtroom "infected the sentencing with structural error that tainted the entire proceeding." Id. 7. Myers also argues that the court (1) violated his due process rights by not inquiring into his medication regimen and (2) violated his confrontation rights by not adequately protecting his rights after he was removed. Id. 8. The government moves to dismiss Myers's motion pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. See Gov't Mot. [D.E. 151] 1.

II.

In considering a motion to dismiss under Rule 12(b)(6), a court must determine whether a complaint is legally and factually sufficient. See Fed. R. Civ. P. 12(b)(6); Ashcroft v. Iqbal, 556 U.S. 662, 677–84 (2009); Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555–56 (2007); Coleman v. Md. Ct. of Appeals, 626 F.3d 187, 190 (4th Cir. 2010), aff'd, 132 S.Ct. 1327 (2012); Giarratano v. Johnson, 521 F.3d 298, 302 (4th Cir. 2008); Goodman v. Praxair, Inc., 494 F.3d 458, 464 (4th Cir.

5

2007) (en banc); accord Erickson v. Pardus, 551 U.S. 89, 93–94 (2007) (per curiam). Although a court "assume[s] the facts alleged in the complaint are true and draw[s] all reasonable factual inferences in [plaintiff's] favor," Burbach Broad. Co. of Del. v. Elkins Radio Corp., 278 F.3d 401, 406 (4th Cir. 2002), a court need not accept a complaint's legal conclusions drawn from the facts. See Iqbal, 556 U.S. at 677–80. Similarly, a court need not accept as true "unwarranted inferences, unreasonable conclusions, or arguments." Giarratano, 521 F.3d at 302 (quotation omitted); see Iqbal, 556 U.S. at 677–80.

A.

Myers argues that Craven provided ineffective assistance at sentencing and on appeal. See Mot. Vacate 4–7. The Sixth Amendment right to counsel includes the right to the effective assistance of counsel at sentencing and on direct appeal. See Smith v. Murray, 477 U.S. 527, 535–36 (1986); Gardner v. Florida, 430 U.S. 349, 358 (1977); see also Bobby v. Van Hook, 130 S. Ct. 13, 16 (2009) (per curiam); Strickland v. Washington, 466 U.S. 668, 686 (1984).

To prevail on a claim of ineffective assistance of trial counsel, a party must first show that counsel's performance was deficient. See Van Hook, 130 S. Ct. at 16; Strickland, 466 U.S. at 687–91. Counsel's performance is deficient when counsel's representation falls "below an objective standard of reasonableness in light of prevailing professional norms." Van Hook, 130 S. Ct. at 16 (quotation omitted); see Strickland, 466 U.S. at 688. When determining whether counsel's representation was "objectively unreasonable," a court must be "highly deferential" to counsel's performance and must attempt to "eliminate the distorting effects of hindsight . . . ." Strickland, 466 U.S. at 689. Therefore, the "court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance . . . ." Id.

A party must also show that counsel's deficient performance prejudiced the party. Id. at 687.

6

A party does so by showing that there is a "reasonable probability" that, but for the deficiency, "the outcome of the proceeding would have been different." Id. at 694.

Myers's allegations do not suggest that Craven's performance in preparation for and during the sentencing hearing fell below an objective standard of reasonableness. First, Craven's failure to object to Myers's fraudulent claims from 1999, 2000, and 2001 being included in the PSR as relevant conduct was not objectively unreasonable. Notably, the conduct was similar to that in the indictment and was committed only a few years earlier. See U.S.S.G. § 1B1.3(a)(2); see also United States v. Banks, No. 92-7003, 1994 WL 445707, at *3–5 (4th Cir. Aug. 18, 1994) (per curiam) (unpublished). Second, contrary to Myers's accusation, the transcript shows that Craven objected to and vigorously argued against the loss calculation. See Sent'g Tr. 8–12, 26–31. The court, however, overruled the objection because of controlling precedent, not because of Craven's failure to articulate Myers's position. See id. 8–12, 26–33. Third, as for Craven's failure to cross-examine Dorisio, Myers had "no right to [have Craven] cross-examine . . . [her] at sentencing." United States v. Canales-Reyes, 454 F. A'ppx 208, 211 (4th Cir. 2011) (per curiam) (unpublished); see United States v. Powell, 650 F.3d 388, 391–94 (4th Cir.), cert. denied, 132 S. Ct. 350 (2011). Alternatively, Craven's decision not to cross-examine Dorisio, Myers's former wife, was a "sound strategic choice." Lovitt v. True, 403 F.3d 171, 179 (4th Cir. 2005). Fourth, Craven was not objectively unreasonable in suggesting that Myers's condition could "affect his ability obtain a fair hearing . . . ." Mot. Vacate 5. Moreover, the court was well aware of Myers's condition and, notwithstanding, concluded that Myers had forfeited his right to be present by disrupting proceedings despite repeated warnings. See Sent'g Tr. 14–26. Fifth, contrary to Myers's assertion that Craven did not protect Myers's rights after Myers was removed, Craven persisted in Myers's objections, moved for a downward departure, sought a lenient sentence, and objected to Dorisio's being classified as a

victim. See id. 27–53. In sum, Myers's unsupported accusations fall far short of plausibly alleging that Craven's performance in preparation for and during Myers's sentencing hearing fell below an objective standard of reasonableness.

Because Myers does not plausibly allege a deficiency in Craven's performance, the court necessarily concludes that Myers fails to plausibly allege that any such deficiency prejudiced him. Accordingly, Myers fails to state a claim for ineffective assistance of trial counsel upon which relief can be granted.

To prevail on a claim of ineffective assistance of appellate counsel, a party must show that counsel's representation was objectively unreasonable and that a reasonable probability exists that, but for counsel's error, he would have prevailed on his appeal. See Smith v. Robbins, 528 U.S. 259, 285–86 (2000). Appellate counsel is not required to assert all non-frivolous issues on appeal, "but rather may select from among them in order to maximize the likelihood of success on appeal." Id. at 288. "[W]innowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." Murray, 477 U.S. at 536 (quotation omitted).

Myers does not plausibly allege that Craven's appellate performance was deficient. First, Myers's objection to the court's use of the preponderance standard at sentencing is frivolous. See, e.g., United States v. Watts, 519 U.S. 148, 156–57 (1997) (per curiam); McMillan v. Pennsylvania, 477 U.S. 79, 91–92 (1986). Likewise, Myers's argument that his removal from the courtroom infected the sentencing with structural error fares no better. Although a defendant has a constitutional right to be present in the courtroom during adversary proceedings, a defendant may waive that right. See Illinois v. Allen, 397 U.S. 337, 343 (1970). Here, the court properly determined, in accordance with Rule 43, that Myers waived his right. See Fed. R. Crim. P.

43(c)(1)(C); see also United States v. Beckham, 420 F. App'x 261, 265 (4th Cir. 2011) (per curiam) (unpublished); United States v. West, 877 F.2d 281, 287 (4th Cir. 1989). Craven's decision to forego asserting these frivolous arguments on appeal was not objectively unreasonable. See Robbins, 528 U.S. at 288; Murray, 477 U.S. at 536.

Alternatively, Myers's allegations do not suggest that, but for Craven's abandoning these issues, Myers would have prevailed on appeal. See Robbins, 528 U.S. at 285–86. Therefore, Myers fails to state a claim for ineffective assistance of appellate counsel upon which relief can be granted.

## B.

Myers argues that the court violated his due process rights by not inquiring into whether his medication regimen would affect his ability to proceed. See Mot. Vacate 8. Myers also argues that, during the sentencing hearing, the court inadequately protected his Confrontation Clause rights after Myers was removed from the courtroom. Id. 8.

The Due Process Clause of the Fifth Amendment obligates a court to inquire into a defendant's competency if reasonable cause exists to question his competency. See United States v. General, 278 F.3d 389, 397 (4th Cir. 2002); United States v. Mason, 52 F.3d 1286, 1290 (4th Cir. 1995); see also Burket v. Angelone, 208 F.3d 172, 192 (4th Cir. 2000) (a court cannot ignore "facts raising a 'bona fide doubt' regarding the petitioner's competency"). "In determining whether there is reasonable cause to order a competency hearing, a trial court must consider all evidence before it, including evidence of irrational behavior, the defendant's demeanor at trial, and medical opinions concerning the defendant's competence." Mason, 52 F.3d at 1290; see Drope v. Missouri, 420 U.S. 162, 180 (1975). "Medical opinions are usually persuasive evidence on the question of whether a sufficient doubt exists as to the defendant's competence to require a competency hearing." General, 278 F.3d at 398 (quotation omitted); see Mason, 52 F.3d at 1290.

9

Here, doctors who examined him found that Myers was legally competent. See, e.g., [D.E. 78-1, 78-2] (letters from two evaluating doctors); Sent'g Tr. 15 ("[I]n the opinion of all the doctors who have evaluated [Myers], [he] is, without question, legally competent."). Additionally, the court held a competency hearing, after which it found that Myers was legally competent [D.E. 82]. Moreover, at the beginning of the sentencing hearing, Myers, Craven, and the government reaffirmed their beliefs that Myers was competent to proceed, and the court observed Myers and considered the entire record before concluding that Myers was competent to proceed. See Sent'g Tr. 3–4. The court was not required to inquire further into Myers's competency to proceed. See United States v. Molina-Garcia, 405 F. App'x 393, 395 (11th Cir. 2010) (per curiam) (unpublished); United States v. Banks, 482 F.3d 733, 742–43 (4th Cir. 2007); United States v. Taylor, 437 F.2d 371, 376 (4th Cir. 1971); see also Burket, 208 F.3d at 192. Thus, this claim fails.

As for Myers's Confrontation Clause challenge, the Sixth Amendment provides that "[i]n all criminal prosecutions, the accused shall enjoy the right to . . . be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. However, "the Confrontation Clause does not apply at sentencing proceedings." United States v. Padron-Yanez, 433 F. App'x 189, 191 (4th Cir. 2011) (per curiam) (unpublished); see Powell, 650 F.3d at 391–92. Moreover, even if the Confrontation Clause did apply, Myers waived his right to be present to attack the evidence against him. See Fed. R. Crim. P. 43(c)(1)(C); Allen, 397 U.S. at 338–44. Accordingly, this claim fails.

Finally, Myers filed a "motion to compel an answer, for issuance of improper subpeona [sic]," asking the court to order Assistant United States Attorney Norman Acker III to explain why he requested a subpoena in Myers's case. See Mot. Compel [D.E. 157] 1. The United States Attorney's Office does not need to justify to Myers its issuance of a subpoena. This motion is denied.

III.

In sum, the court GRANTS the government's motion to dismiss [D.E. 151], DISMISSES Myers's motion to vacate his sentence [D.E. 146], and DENIES Myers's motion to compel [D.E. 157]. The Clerk of Court shall close this case.

SO ORDERED. This 25 day of June 2012.

*(signature)*
JAMES C. DEVER III
Chief United States District Judge